Mr. Larson, are you ready to proceed? I am, Your Honor. All right, you may proceed. May it please the Court, My name is James Larson, and I represent Addie Glynn Tate. My client in 2005 purchased a single-family residence that's located in Country Club Hills from Jewel Lewis. At the time of the sale, Ms. Lewis was facing the possible loss of her property in a foreclosure action that was pending against her in the Circuit Court of Cook County, Illinois. In the period between the time of the foreclosure sale that was conducted in that proceeding and the scheduled confirmation hearing of the sale, Ms. Lewis sold the property to my client, where she currently resides and has that property as her domicile. Subsequent to the sale, all parties that were involved in the transaction, save Greenwich Investors, who was the third-party purchaser at the foreclosure sale, reached an agreement that provided for the vacature of the foreclosure sale and the dismissal of this proceeding. In preparing to appear before you this morning, it occurred to me that perhaps more important than telling you what issue I perceive as being presented by this appeal is to tell you what I think is not implicated by this appeal, which is namely, I don't view this as being a late redemption case. Rather, I think that the facts of this case demonstrate or involve an instance where a lender and a borrower that was facing loss of title to her home reached a consensual agreement that provided for a mutually beneficial result. That raises the question, when is a foreclosure sale concluded? Does it require the confirmation of the judge before it is concluded? I believe that the law in Illinois is clear, that the bid that is submitted by a purchaser at a foreclosure sale is merely an irrevocable offer to purchase that property that does not become accepted until the date that that sale is confirmed. That being the case, it seems to me that until the sale confirmation occurs, that the provisions of the mortgage foreclosure law contemplate, as well as in light of the provisions of 2-1009 of the Code of Civil Procedure, contemplate a mechanism by which a lender and a borrower can reach a mutually consensual agreement to provide for the dismissal of that case. So there's no need to revive the, there's no need for the rights to be revived by the owner? I believe that's exactly correct. And that's why I say from the inception that I don't believe that this is a situation where we have a revival of redemption rights. The Code or the Foreclosure Act is very clear in what it provides, that once the statutory and equitable periods for redemption have expired, that those timeframes are not subject to revival. And the rationale I think that the General Assembly had for enacting that particular provision was to afford rights to a lender that basically brought a foreclosure proceeding to a conclusion. Otherwise, you could have a scenario where a borrower comes in and says, if I just had a little more time to sell this house, I can realize the equity that I have amassed in the property. And I think that that really dovetails nicely. If you go back and look at the legislative history of the mortgage foreclosure law, you'll see that the Assembly had the notion that the law should be enacted so as to create a mechanism by which borrowers could realize, to the extent possible, the equity that they had amassed in their property during their period of ownership. You referred to an agreement that was reached between the bank and the borrower in this case. If the period of redemption had expired, and it had, had the bank not agreed to this, we wouldn't be in this situation now. Is that correct? That's correct. Well, back to the reason for the legislation. Is it your position that despite both the expiration of the statutory redemption period and the closing of a valid judicial sale, a bank may nevertheless continue to list and market the subject property up until the order confirming the judicial sale? I don't believe that the bank has any right to list the property. But I think that it is conceivable that a borrower can continue to pursue a third-party sale and come back to the lender with the notion of, I'd like to have you agree to a short sale. And wouldn't that lead to unpredictability and instability in the foreclosure market? I don't believe so, Your Honor, for a number of reasons. I think that in application the situation, this particular situation, is not going to routinely arise. In fact, the only time that this situation is going to arise is where the mortgage foreclosure law has really failed to achieve its purpose. Specifically, the concept, as I mentioned, was that the foreclosure law is enacted to provide a borrower with an opportunity to realize as much equity as possible. In this particular instance, it obviously failed to permit Ms. Lewis to realize as much equity as possible because there's no dispute that she sold the property that's involved in this dispute to my client for an amount that was considerably greater than the amount that was bid by the third-party purchaser at the foreclosure sale. So she approached the lender and said, look, I can get you more money than what was realized by the foreclosure sale. Obviously, that inures to the benefit of household in this particular instance. It also inures to the benefit of Ms. Lewis, who now no longer faces a large deficiency judgment in her foreclosure proceeding. You rely, Mr. Larson, upon the Thompson case to support your position that this is okay? I don't necessarily rely upon the Thompson opinion. I think that the Thompson case reached the correct result, but I'm not sure that this court or any other court in the state, for that matter, has really addressed the notion that 2-1009 of the Code of Civil Procedure contemplates the type of result that we had here. You will admit that the appellate court here and, in fact, all the other appellate court cases would be in conflict with Thompson on this general issue, maybe not the specific way that they got there, but the general issue is found against your position. Let me answer if I may this way. Let me just, I misspoke. The courts on the general issue have found against the Thompson position and your position. There is a differing viewpoint, and I assume that that is one of the reasons that this court took this case. Number one, that there is a distinction or an actual conflict between the Thompson holding and the holding in the Boyd decision, and that that conflict, I assume, was one of the reasons that Your Honors granted the petition for leave to appeal in the present case. I also suspect that your decision was motivated in part by an appreciation of the fact that this case has implications as it relates to the current subprime crisis that is confronting the courts in this state and the courts throughout the United States. Because if you accept the position that I'm espousing today, essentially what you are allowing to have happen is you are affording borrowers the right to save themselves from the severe consequences of foreclosures, and you also are having the tangential effect of affording lenders some relief. And perhaps that's not as persuasive an argument as it might be in light of the fact that some hold the view that the lenders are reaping what they sowed, but the fact of the matter is that the application of the position that I'm espousing leads to the result that borrowers are avoiding potential deficiency judgments as a result of sales that don't realize the full equity that the borrower had amassed in the property. And those, I guess, are valid public policy considerations, but 15-605 says no equitable right of redemption shall exist or be enforceable under or with respect to a mortgage after a judicial sale of the mortgage real estate. So we still have a plain language problem here, which is more what we do in public policy, although at times we go into that, and more what is taken across the street. So how do you get around the plain language of the statute? Well, I think the answer to that is that 1605 and the analogous provision, of course, being the provision that contemplates equitable redemption, both set forth a statutory rubric for exercise of the redemption process, how it goes about. You file your notice of intent with the circuit court. And if you look at it from that perspective, the statutory remedy of redemption is something that is out there and has been enacted for the benefit of borrowers. In this case, what's transpired is not the exercise of a statutory right of a borrower against the lender. Rather, it's a unique situation where a borrower and a lender have come to terms and decided post-sale and pre-confirmation that the sale didn't reach the desired result. So this really, in the strictest sense, does not constitute a redemption. What it is is that these two parties prior to sale confirmation reach a, I guess for lack of better words, a deal that makes sense for both of them, and that as a result of that agreement, the parties stipulate between themselves to the dismissal of the foreclosure proceeding. Obviously, that agreement has consequences as it relates to the third-party purchaser. Obviously, they've put some money on the table. They've submitted a bid at sale. But the fact of the matter is that, as we are all aware, the foreclosure process is not something that's out there for the uninitiated. The fact of the matter is that the problems or the risks that are associated with bidding at a foreclosure sale are long. You can go through and look at it from the perspective of whether or not there's some sort of a judicial or jurisdictional defect, whether the sale was properly published, whether or not all necessary parties have been joined, whether or not there's tax issues, whether or not there's a senior lien claimant. The folks that are bidding at foreclosure sales are not uninitiated. They are aware of the possibility that a sale might not be confirmed and of the problems that might arise after the fact in the event that they were the successful bidder and the sale is confirmed. Certainly, courts in this state have long taken the viewpoint that if you bid at a foreclosure sale, it's buyer beware. You get what it is that was out there to be sold. I think Greenwich's position is that if this court condones what I am espousing, namely that a borrower and a lender can reach an agreement and provide for a post-sale dismissal of the proceeding, then we're going to open the door to a parade of horribles. In other words, that foreclosure sales are not going to realize full value, that the third-party purchasers are going to walk away from the sale, and that as a result the foreclosure sale prices are going to drop. I would submit to you that the facts that are presented in this case suggest that the foreclosure sale process really didn't work here. If, in fact, the foreclosure sale that Greenwich participated in was really in the spirit of the foreclosure law, the sale price would have been much more close to what it is that my client paid for the property to Miss Lewis subsequent to the sale. And as a result of that, I would submit that there really isn't a situation here that this creates a parade of horribles. And I think that there's certainly, as I mentioned before, no reported decision that I'm aware of that suggests that 2-1009 doesn't authorize a trial court to grant a joint motion of a foreclosing lender and a borrower to voluntarily dismiss a proceeding post-sale. And I think that it's fair to assume that in light of the fact that no court in this state has ever reached that decision, that the possibility of that type of dismissal is implicit and is maybe taken into consideration by the folks that are bidding at foreclosure sale. In other words, they're aware of it going in, that it's conceivable that somebody like me is going to come along and end up before the Illinois Supreme Court arguing that 2-1009 permits the voluntary dismissal of a mortgage foreclosure case post-sale and pre-confirmation. As I mentioned, Your Honors, I think that the goal of the General Assembly in passing the mortgage foreclosure law was to establish a set of guidelines that govern the relationship between a foreclosing lender and a borrower and that a third-party purchaser only enters into the equation to the extent that their participation in the process somehow benefits one or both of those parties. And in this instance, I would submit that the benefit just wasn't derived. And so it shouldn't come as any surprise to Greenwich that we would be asking the trial court to voluntarily dismiss the proceeding when a better agreement was reached between the two parties, an agreement that was to both parties' mutual benefit. I have to give the drafters of the mortgage foreclosure law a lot of credit. I think back in 1987 when they drafted that provision or that section, that it would have been difficult to imagine that some years later that lenders would be pooling loans, securitizing them and selling them and putting them on the market with investment houses involved and so on and so forth. But the fact of the matter is that the statute, for the most part, is performing its job. It has adapted to the types of pooling and servicing agreements that seem to be replete in today's society. I think that in light of the current crisis that's going on, there is no good reason for this court to step in and tie the hands of lenders to prohibit the type of agreement that Household and Ms. Lewis reached. I submit that the potential for profits will remain, because it's a sad fact that in the vast majority of mortgage foreclosure actions, no borrower ever appears, that a default judgment is entered, and that a foreclosure sale is conducted and is confirmed without any participation. In other words, folks like Greenwich are going to be able to reap their profits and still have an adequate incentive to participate in the proceeding. Thank you. Thank you, Mr. Larson. Mr. Rychek? May it please the Court, fellow counsel, my name is Stephen Rychek. I represent Greenwich Investors, LLC, which was the purchaser of the foreclosure sale in this particular case. This particular case arose, as my counsel just stated, as did the vast majority of the cases where there was a default judgment and no participation whatsoever by any defendant in this case. The sole entity that participated in this particular case was the bank, and the bank alone. The bank sets the parameters of the entire foreclosure procedure. Counsel makes it sound as if the Foreclosure Act was just enacted to protect borrower's equity. Well, of course, what better way to protect equity than to get as high a price as possible on the sale of any real estate in a foreclosure? If it's up to the bank, they're going to bid $1 over. I have never seen a bank bid more than $1 over their debt, or actually the amount of their debt. I'm sorry, the bidders would bid $1 over. But the bank bids the amount of their debt and nothing more. So there's absolutely no equity under those circumstances. What's happening in today's market is that the banks are bidding beneath the debt. They're bidding less than the debt. But there is only in the particular foreclosure action, a law as it's now stated, the only way to protect any borrower is for the bidder to come in and bid more money to create a surplus, which until the real estate market collapsed, there were significant surpluses created by clients or people such as Greenwich in making these bids. Now, in this particular case, there was no defense whatsoever to the case. The property was, the mortgage was $80,000. The lender submitted an opening bid of $48,000 or $32,000 less than the amount of its debt. Greenwich came in and bid $1 over or some other figure close to that. Maybe there were some other bids. I don't know. But that's what happened. It ended up at $48,001 or some figure like that. So in the normal course of procedure, the bank comes into court and says, we would like the sale confirmed because that's the only way they can get their money. The money sits with the selling officer or with the court. They have to come in and they have to get the sale confirmed in order to receive the proceeds of the sale since if they're not the high bidder, they're not taking the real estate, which is another thing that many lenders are happy that a third-party bidder comes in because they don't have to then deal with the property anymore. It's no longer their headache. That's another reason probably why they dropped the price because they like it when the third party, they don't have to deal with that real estate anymore. So they decide based on the amount they're owed, the value of neighboring properties, what their initial price is going to be. If they think there's enough for them to be able to obtain the amount of their debt by a sale to another person, they'll make the bid higher. It's totally in the lender's control. People such as Greenwich have no rights whatsoever until there is a judicial sale. The defendants can come into court. They can stop a sale. The bank can stop a sale. They can say, I want to try to figure out how we can get more money out of this. Maybe we can work with the defendant, all that. But once they go to a sale, that's when the rights of the third-party bidder come to play. So before the sale, they have no rights. Now we get to a situation after the sale. The law is clear, and it was contemplated in the change of the law. Prior to the change in the law, which I think was in the 80s, they used to have sales. They would put the money into an account, and it would sit there for six months while people had it. Let me just ask this question. Is the sale concluded at the time the highest bid is made and the deposit money is made? No, that's not the conclusion. It requires a confirmation of the judge? It does. The confirmation was not given here? No, they wouldn't confirm. They filed before they got to confirmation. So the right of redemption still existed with the prior owner? No, I don't agree. If the sale was not conservated? Well, according to the way I read the statute, once it holds a sale, they have no longer a right of redemption. Yeah, but my question was, when is the sale concluded? At the time the money is placed up for the highest bid or when the judge confirms the sale? Decision, you know, the sale is concluded when the sale takes place, and then it has to be confirmed. Why does the statute call for the confirmation of the judge? Then that's his conclusion. I'm sorry? Then that must be the time of conclusion. But the way I view the law and the way the other courts have looked at it, they say that they hold a sale, and then they go to confirmation. But the statute says you shall confirm unless. It doesn't say you may confirm, you might confirm. It says you shall confirm. The fact remains confirmation was not made. No, there was no confirmation in this case. Why isn't this like other civil cases in which the plaintiff controls the litigation, and any time of forejudgment, they can dismiss their case? Oh, I agree, but they didn't in this case. They had already had a judgment of forecourt. But if it isn't concluded until the sale is confirmed, how can anybody force them to proceed with a cause of action they wish to abandon? Well, because we as a third-party bidder should have certain rights because we did not ask to come into this case until the plaintiff gave us that right. So your client acquired, what's the nature of the right they acquired then at the sale? The way the courts have looked at it, we acquire a right to intervene, and in my opinion, we acquire the right to request the court to confirm. At that minimum, I think we acquire the right to intervene in the case and ask the court to confirm a judicial sale. So you would ask, you think you could be substituted basically as the plaintiff? Yes, I do. I feel if we're not protected in that way, we have no rights. Well, indeed, I think this is how the appellate court found it. 1508B says the trial court shall enter an order confirming the sale unless it finds that justice would not otherwise be done. And I don't think that's disputed by Mr. Larson. In other words, the trial court may refuse to approve a judicial sale under that statute, it would seem, only if unfairness is shown that is prejudicial to an interested party. But I've got a question on the facts here, and if you want to touch upon what Mr. Larson explained as a public policy argument in light of the foreclosure crisis, real estate crisis that we're in, it appears that Household filed a motion to approve the sale, and then they withdrew that motion, right, when one of the mortgagers, Lewis, right, said let me try to work out a short sale, right? Well, that's what it appears. However, Lewis nor Tate ever appeared in front of the court. This was all what was stated to the court by counsel for the bank. Well, certainly there was an $80,000 deficiency. It appears that Lewis takes a look at this and said it went for $48,000. I had no idea the bank would accept that little money, and Greenwich reaped the benefit of that, and now we've got Addie Tate that will come in for close to $68,000. You know, and with that as the backdrop, even on the appearance of facts, you know, how do you respond to Mr. Larson's argument that in light of this crisis isn't, and I already indicated that public policy may not come into play, but I am interested in your response as to why does not the real estate crisis benefit by a decision that goes his way? Well, in today's market it might benefit. In tomorrow's market it might be a detriment because there has to be some stability, and the idea is to obtain from that third-party bidder the highest bid possible. Well, if people go to these sales with the concept that they're going to bid on a piece of real estate and all of a sudden they can have the bid taken away because some other deal was made subsequent to the sale, then that's going to deter people from going to these sales. By the way, in the statement of facts that was given in this case by Appelant, he did not state that the case was dismissed. There is no evidence. I was thinking about that. There is no evidence that this case was actually dismissed, and I don't know how you have an agreement to dismiss when there's only one party in the court. I mean, certainly if Ms. Tate, who bought the property with the foreclosure case pending, wanted to make sure that her rights were protected, she should have appeared in that court before the confirmation, before the motion to confirm, or at any time during the proceeding, but she didn't. She just bought the property without ever coming to court, and the defendant never came to court, and there's no evidence that either of those parties came to court. What people would it defer from coming to these sales? The professionals who were involved in making money? I think it would defer. Yeah, I think it would. I think it would have an impact. And what is the loss to them? Excuse me? What is the loss to the professionals? No, it's not to the professionals. It's really to the borrowers because, after all, again, the bank is not going to bid more than its debt, and the concept here is to obtain from a third-party bidder as much of a bid as possible. That's the whole idea that was behind the statute. The statute was created to say, okay, now we don't have a redemption. We have a judgment. It's time to go to sale to protect the rights of the borrower. They didn't have to do that at all. I guess they could have just said, well, okay, now the property is the property of the bank. Well, they wouldn't want to do that because then everybody's equity would be wiped out. So they said, well, let's have a procedure where it's possible that we can have some equity, even though the borrower doesn't want to come to court. Let's them be put in default, doesn't do anything about it, doesn't try to protect themselves. We're going to protect them anyways. And the way they're going to protect them is to generate some interest from third parties that will come in and buy this real estate. And really, these are not like your typical real estate deals. I mean, this is not like we sign a contract, we get time to get a loan, we'll look things over, we get to inspect the property. None of that in this case. None of that in any of these cases. What happens in these cases, you've got to have cash on the barrelhead at the sale. So maybe they give you 24 hours, but that's it. You've got to have 10% minimum when you make your bid and the balance of the money the next day. And there's even some law firms that want all the money at the sale. Now, they do want bidders, but look at the kind of people you're going to get when you have those conditions. It's not as if everybody's walking around, even in this case, with $50,000 sitting in their pocket waiting to buy a piece of real estate that day. But even under those circumstances, the actual – So the competitors for this divide in the money is the bank or the professionals? Well, I don't consider – yes, it's people that go out and bid. I don't – to call them professionals – Right, the beneficiary will. Otherwise, why would we have that procedure? Why would there be that procedure at all if somebody isn't going to benefit from it? I mean, granted, the people that buy are benefiting, but so are the people that own it unless – because if the bank buys it again, they're going to get no equity at all. Then you have a situation where there's second mortgages. I could show you cases – well, first of all, I can show you cases, as I've said in my brief, where there was a $1 million surplus, a $1 million surplus, where a person actually walked into Judge Kennard's court, I saw it with my own eyes, and asked for and received a $1 million check from a sale of real estate at a foreclosure. But if those rights start getting chipped away, then there won't be bidders. I know counsel doesn't believe that, but it's true. If those rights – well, you have to go through what Judge Posner called standardless litigation, where they all of a sudden – Your position is that this amount is tantamount to an extension of the redemption period, right? That not – being able to withdraw the motion for approval of judicial sale, to be able to withdraw that and then sell to another purchaser, is really tantamount to an extension of the redemption period. Oh, definitely. And in this case – Just to make – try to understand your argument, on the public policy issue, you're saying that without that stability of knowing that a sale is a sale is a sale, you're not going to get clients such as yours to bid at these sales without some certainty? Yes. Okay. All right. I understand. But it's not the prior owner who extends the redemption period? No, it's not the prior owner. It's the bank. Well, in this case, it's clear what the bank did. It's clear what happened. I think one of the justices said exactly what happened. They had no idea that the bank would drop the price to $48,000. When they found that out, after our client put up the money, they said,  Same thing happened in Boyd. The same thing happened in the Thompson case, really. It's the same concept. It's like once you have a sale and there's some idea of what the price is or what the property is going to sell for, it's a lot easier to then come in and say, well, gee, we can pay more. But that's not the concept of the law. The law has to protect the people that want to make these bids and then, in essence, protect the borrower. Even though it doesn't look like it, it really is protecting the borrower. That procedure wouldn't be put into the law. A law that just allows the bank to bid, that would protect no borrower. There has to be some third party in there. Otherwise, there will never be any protection at all. And who was Lewis exactly under the facts? Lewis was the defendant who never appeared ever. Mr. Larson's client is Tate, who was the purchaser from Lewis at a sale who bought subject with a list pendants pending, who bought subject to this litigation without herself. But Lewis was one of the mortgagors. Yeah, Lewis was one of the mortgagors. And the one that presumably negotiated another short sale. Right. Our short sale wasn't a short sale because it was a bid, although it appears like it's a short sale. The bank, they made their own short sale. They just said, well, we don't want the property, so we're going to lower the bid. In following up on Justice Garmon's question about the right of the plaintiff to control its lawsuit and dismiss, you're saying because you became a bidder, you have an intervening right that prohibits that? I believe so, yes. Is that set forth either in the mortgage foreclosure law or the civil procedure code? No, it is not. There is no specific. I did have the same issue in a federal case where they tried that, but that's not here today. However, again, I'm not sure this case was ever dismissed, even though counsel says it was. In his brief, he didn't say it was. The motion to confirm the sale, the sale was vacated. Is that correct? Correct, but there was no order that I'm aware of, and it wasn't set forth in the brief that said this case was dismissed. Counsel, just to follow up on Justice Carmeier, as I understood his question, it really covered two points, and maybe I didn't hear it right, but the motion to confirm was simply withdrawn. Correct. And then the sale was vacated. The sale was vacated. There was never a confirmation entered. No, no confirmation. But, again, that's contemplating a confirmation shall be entered unless. Upon motion being filed, there was no motion before the court. That's correct. There was no motion. Does the purchaser at the judicial sale have the right to make that motion? Do you believe under the statute? I believe they have the right to intervene in the case and make that motion. Otherwise, it would be a joke. It wouldn't even be. I mean, because then no sale would ever be confirmed. Unless the bank wanted it. If the bank said we don't want to confirm, of course you'd have to have that right. That's just part of what goes with buying the property. So you dispute that you're just merely making an offer to purchase. You believe you acquire some rights by bidding at the judicial sale. Yeah, I think the cases are clear on that. I think we're buying the right to intervene in the case and make the motion to confirm. Thank you, Mr. Reichert. Mr. Larson, rebuttal. Thank you, Your Honor. I think that if this court were to adopt Greenwich's view, essentially it makes the confirmation process a fait accompli. Once the gavel comes down, there's no longer any consideration as to whether or not the sale. Well, I guess there's a few limited considerations, whether or not the notice was proper and so forth. But there's no other really consideration that's supposed to be made. What about 1508B? Oh, that's exactly. The court shall enter. There certainly, 1508 certainly suggests that confirmation is supposed to be something that the court should do, unless justice was not otherwise done. That provision has to mean something. And it seems to me that if you adopt the approach that Greenwich argues, that really what you are doing is implicitly repealing that provision. Well, where was justice not done here? Well, I think that justice was not done in this particular situation, in that the avowed goal of the mortgage foreclosure law, of permitting a borrower to realize as close as possible the equity that she had amassed in this property, didn't occur through the conduct of the foreclosure sale. The fact of the matter is that the agreement that Ms. Lewis reached with Household permitted her to more realize the equity that she had amassed, to avoid the deficiency judgment, and to permit Household to be in a better position that it was in as well. I would submit to the court that that type of alignment doesn't occur very darn often. As counsel suggests, the surpluses are so rampant in Cook County that the presiding judge in the Chancery Division has been forced to set up a special call to administer million-dollar surplus awards. That would suggest that the mortgage foreclosure law, as enacted by the Assembly, isn't broken. And that if you adopt the position that I am taking, that you are just allowing the lender and the borrower to achieve a mutually beneficial goal. If you reject the notion, it seems to me, that what you are doing, in essence, is elevating the right of a third-party purchaser over those of the lender and the borrower. Now, that's not to say that I don't think that a third-party purchaser has a voice in this whole equation. But here's what I'm having difficulty with your argument as it relates to 1508B. To be sure here, the judicial sale yielded a lower price than the private sale. And 1508B says, you confirm, unless there was the exact words, may refuse to approve a valid judicial sale only if unfairness is shown that is prejudicial to an interested party. So no dispute, the private sale got more money than the judicial sale in this case. But it doesn't change the fact that the private sale occurred after the deadline. So when we're looking at whether or not this court has to approve the judicial sale, which did come before the court, before it was withdrawn, aren't you backing up from that point? You don't look and say, okay, well, now after the judicial sale, we got more money, and therefore that makes improper what occurred at the judicial sale. Well, again, Judge, I think that one of the things that I would stress is that in my view, what transpired here was not redemption. It doesn't look like the type of statutory redemption that's contemplated by 1603. I don't believe it was an equitable redemption that's contemplated by 1605. I submit to you, Judge, that the case law couldn't be clearer on the point that redemption once expired can't be revived. Rather, what happened here was that there was an agreement that the parties reached, it was mutually beneficial, and the plaintiff exercised its rights to voluntarily dismiss. As I was saying, I don't think that Greenwich is without a voice here. I think that if you look at the provisions of 2-1009 and you apply it to 1508, which talks about the justice not otherwise done standard, as well as the holding in the fleet mortgage versus deal opinion, which talks about how it's important in considering the confirmation motion, that the trial court view what's happening with respect to all parties, that in this particular case, the record is devoid of any evidence that Greenwich came before the trial court and submitted any evidence that they were harmed in any way, shape, or form, by the agreement that Household reached with Lewis. What about rebuttal as to Mr. Rychek's response to your public policy argument? That in these days, when a bank knows that they're owed more money than they can get on the open market, they're willing to come up with their own short sale. And the people like Greenwich won't come in if they don't know that that's etched in stone, that there is some stability as to the rules. Well, number one, as I mentioned earlier, I think that until this court says that 2-1009 doesn't permit a foreclosing lender to dismiss in this particular period, that we have to presume that that's being factored into the analysis that third-party purchasers bring to a foreclosure sale. I also think that Mr. Rychek's position discounts the possibility that, ironically, the position that I am espousing could actually result in foreclosure sale prices increasing. If a third-party purchaser is aware of the possibility that a lender and a borrower might reach an accord post-sale pre-confirmation, doesn't that create an incentive for that third-party purchaser to come in and actually bid a little bit more to create the type of disincentive that would create a disincentive to them submitting a lowball bid? I would point out to the court that, although it's certainly not of any real precedential consequence, that the General Assembly in Iowa recently enacted a provision that authorized the very type of post-sale mechanism that allows a borrower or lender to voluntarily dismiss a foreclosure sale in proceeding. Even after that proceeding has been confirmed. I would submit that the folks in the Iowa General Assembly may have the same type of view that I do, that there is reasons to believe that authorizing this type of a situation to exist with the protection that's provided by 1508 and the type of 2-1009 analysis that allows the court to weigh the harm is going to provide more than adequate protection. For all those reasons, Your Honor, I would respectfully request that this court reverse the opinion that was entered in the First District Appellate Court. Thank you. Thank you, Mr. Larson. Thank you, Mr. Rychek. Case number 104-826, Household Bank, etc. et al. versus Jewel Lewis et al., Eddie Glenn Tate Appellant, is taken under advisement as agenda number 17.